IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSELLA A. HARPER, on behalf of herself and all others similarly situated | : : : : | CIVIL ACTION |
| v. | : : | |
| TRANS UNION, LLC, et al. | : | NO. 04-3510 |

O'NEILL, J.                                                                                         DEC. 20, 2006

## MEMORANDUM

On July 23, 2004, plaintiff Rosella A. Harper filed a class action complaint against defendants Trans Union, LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC. She alleges that defendants, three credit reporting agencies ("CRAs"), engaged in the business of assembling, evaluating and dispersing information regarding their consumers' credit histories for the purpose of furnishing consumer credit reports to third parties and violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681e(b), by generating credit reports which incorrectly noted that she and the members of the putative class had filed for bankruptcy protection. Plaintiff previously opted out of consolidated class action in the United States District Court for the District of South Carolina that asserted identical claims against defendants ("the Clark litigation").[1]

Plaintiffs in the Clark litigation initiated their class action lawsuit against defendants on

---

[1] The prior actions in the District of South Carolina were: Franklin E. Clark v. Experian Information Solutions, Inc., No. 8:00-1217-24; Franklin E. Clark and Latanjala Denise Miller v. Equifax Inc. and Equifax Information Services, Inc., No. 8:00-1218-24 and Franklin E. Clark v. Trans Union Corp. and Trans Union L.L.C., No. 8:00-1219-24. The district court did not reach the merits of plaintiffs' FCRA claims but granted class certification, approved a settlement class, and approved the settlement agreed to by the parties.

1

April 20, 2000 and submitted a motion for class certification on August 9, 2000. The district court denied that motion on March 19, 2001 asserting that plaintiffs' effort to recover only statutory damages would jeopardize the class members' rights to seek alternative grounds of relief in a subsequent case. Pursuant to that ruling, the Clark plaintiffs submitted an amended class action complaint on July 30, 2001, including alternative causes of action and renewing their motion for class certification. The renewed motion was granted on June 26, 2002. Clark v. Experian Info. Solutions, Inc., 2002 WL 2005709 (D.S.C. June 26, 2002). The class in Clark consisted of each individual consumer: (1) who was the subject of a credit report issued by one of the three defendant credit reporting agencies at any time between and including April 20, 1998 and July 31, 2003; (2) who had not filed for bankruptcy during the ten-year period preceding the issue of the credit report; and (3) whose credit report contained a reference to bankruptcy.

     After the certification of the Clark class, the parties entered mediation and constructed a settlement framework, of which the three main components were: (1) defendants' modification of their method of reporting bankruptcies of joint account holders and co-signors; (2) a lower burden of proof and specific remedies in the event of future violations; and (3) defendants' provision of consumer disclosures to class members upon request. A total of 3718 individuals, including plaintiff, opted out of the class action settlement before the opt-out deadline of September 15, 2003. After a fairness hearing, the district court refused to approve the original terms of settlement on October 2, 2003. Further settlement negotiations resulted in several changes to the settlement terms, including an agreement from defendants to remove all references to bankruptcy from the individual consumers' credit reports, and on January 14, 2004, after a second fairness hearing, the district court entered an Order approving settlement in the Clark

litigation.

On July 23, 2004, plaintiff initiated the present action. The putative class consists of those 3718 consumers who opted out of the settlement in the <u>Clark</u> litigation. The claims here are identical to those in the <u>Clark</u> litigation. Plaintiff alleges that defendants failed to follow reasonable procedures to assure the "maximum possible accuracy" of information contained in consumer credit reports in violation of the FCRA. Plaintiff further alleges that inaccuracies in credit reports caused harm to plaintiff and the class members, e.g., harm to credit standing, higher interest rates when obtaining credit, and denial of credit. Before me now is plaintiff's motion for class certification, defendants' responses, plaintiff's reply, defendants' surreplies, and plaintiff's response thereto. Pursuant to defendants' request, oral argument on this motion was held on October 11, 2006. For the reasons stated below, I will deny plaintiff's motion for class certification.

DISCUSSION

I.   <u>Overview of the FCRA Claims</u>

Every class certification review begins with an analysis of the underlying cause of action. <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 172 (3d Cir. 2001). Plaintiff brings this claim pursuant to § 1681e(b) of the FCRA. The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b) (2006). Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer credit report it shall follow

reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." § 1681e(b).

"To recover for a CRA's violation of section 1681e(b), a plaintiff must establish not only that the CRA included inaccurate information in his credit report, but also that (1) the inaccuracy was due to the CRA's failure to follow reasonable procedures to assure maximum possible accuracy; (2) the consumer suffered injury; and (3) the consumer's injury was caused by the inclusion of the inaccurate entry." Crane v. Trans Union, LLC, 282 F. Supp. 2d 311, 319 (E.D. Pa. 2003) citing Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3d Cir. 1996).  The FCRA contains two damages provisions, one providing liability for willful noncompliance, § 1681n, and one providing liability for negligent violations, § 1681o.  The willful noncompliance liability section, which applies to "[a]ny person who willfully fails to comply with any requirement of [the FCRA] with respect to any consumer," provides for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000," punitive damages, costs, and attorney's fees.  § 1681n(a).  The negligent noncompliance section provides for only "actual damages sustained by the consumer," costs, and attorney's fees.  § 1681o(a).

In her second amended complaint, plaintiff alleges that defendants violated § 1681e(b) by generating credit reports which incorrectly noted that she and the members of the putative class had filed for bankruptcy protection which in turn tarnished the credit standing and credit reputation of the members of the putative class.  Pursuant to this allegation, plaintiff seeks statutory damages or actual damages as well as punitive damages, attorneys' fees, expenses and costs.  At oral argument, plaintiff asserted that the majority of the putative class will seek only

4

statutory and punitive damages but conceded that at present the precise number of class members who will choose to seek actual damages is undeterminable.

II.     Class Certification

A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23.  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).  To meet this burden, plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b).  Id.; see Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).

The Court of Appeals has recognized the utility, and often the necessity, of looking beyond the pleadings at the class certification state of litigation.  See Newton, 259 F.3d at 168-69 ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action."). Despite that review, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be taken as true."  Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004).  I also recognize that "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action."  Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970) quoting Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968).

A.     The Requirements of Rule 23(a)

To be certified as a class, plaintiffs must satisfy Federal Rule of Civil Procedure 23(a). Rule 23(a) provides:

5

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Commonly referred to as numerosity, commonality, typicality, and adequate representation, these four requirements are "meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994).

1.    Numerosity

"Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." Newton, 259 F.3d at 182; Fed. R. Civ. P. 23(a)(1). "No single magic number exists satisfying the numerosity requirement." Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989). However, the Court of Appeals generally has approved classes of forty or more. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

I find that the numerosity requirement of Rule 23(a)(1) is satisfied in this case. The number of individuals in the putative class here – 3718 – would make joinder of all members impracticable. Though plaintiff concedes that the precise number of individuals in the class has not yet been determined, the difficulty of attaching each member of a class potentially comprised of thousands makes this case appropriate for class certification.

2.    Commonality

To satisfy the commonality requirement, plaintiffs must show the existence of at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); Johnston, 265 F.3d at 184. "Commonality does not require an identity of claims or facts among class members; instead, the

commonality requirement will be satisfied if the named plaintiffs share at least one common question of fact or law with the grievances of the prospective class." Johnston, 265 F.3d at 184 quoting In re the Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3d Cir.1998) (internal quotations omitted). "All that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same legal theory." Baby Neal, 43 F.3d at 58. With respect to the related criteria of commonality and typicality, the Court of Appeals has recognized that courts have "set a low threshold for satisfying both requirements." Newton, 259 F.3d at 183.

Here plaintiff is challenging on behalf of the putative class a single and uniform procedure followed by each of the defendants during the class period. Plaintiff alleges that several common questions exist, including: (1) whether reasonable procedures, if any, were set up by defendants to assure maximum possible accuracy of the information contained in the consumer reports, including information regarding or relating to bankruptcy; (2) whether defendants set up procedures to assure that data, including information regarding or relating to bankruptcy, was properly recorded and reproduced when reports are prepared; and (3) whether defendants willfully violated the FCRA, i.e., whether defendants adopted a policy "either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997). I find that the factual questions alleged by plaintiff, common to the members of the putative class, are sufficient to satisfy the commonality requirement of Rule 23(a)(2).

3.   Typicality

Although distinct requirements, commonality and typicality tend to merge.  See Stewart, 275 F.3d at 227 ("[B]oth criteria seek to assure that the action can be practically and efficiently maintained and that the interests of the absentees will be fairly and adequately represented.").  To satisfy typicality, "the claims of the class representatives must be typical of the class as a whole." Johnston, 265 F.3d at 184.  In other words, plaintiff must show that she has legal interests such that pursuit of her own goals will benefit the entire class.  See Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985).

Even if there are pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiffs do not have unique circumstances.  See Johnston, 265 F.3d at 184 ("Indeed, so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.") (internal quotations omitted); Baby Neal, 43 F.3d at 58 ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent] class members, and if it is based on the same legal theory.").  Typical does not mean identical, and if necessary a court may sever claims or use subclasses to treat individual issues separately.  Eisenberg, 766 F.2d at 786.

In some circumstances, a plaintiff subject to a unique defense is not an appropriate class

representative. See In re Linerboard Antitrust Litig., 203 F.R.D. 197, 211 (E.D. Pa. 2001); see also In re Initial Pub. Offering Secs. Litig., 227 F.R.D. 65, 87 (S.D.N.Y. 2004). If the litigation threatens to be dominated by an arguable defense or defenses of a named plaintiff or a small subclass, the named plaintiff should not be a class representative. In re Linerboard, 203 F.R.D. at 211 citing Koos v. First Nat. Bank of Peoria, 496 F.2d 1162, 1164 (7th Cir. 1974). To preclude class certification, the unique defense must be a major focus of the litigation. In re Rent-Way Secs. Litig., 218 F.R.D. 101, 113 (W.D. Pa. 2003).

Defendant argues that plaintiff Harper's actual damages claim renders her atypical under Rule 23(a)(3). Though plaintiff admitted at oral argument that the majority of the putative class will seek only statutory and punitive damages, all claims in this case arise from the alleged failure of the defendants to assure maximum possible accuracy of the information contained in consumer reports. In other words, though the precise injuries may differ among the putative class members, all members including plaintiff Harper challenge the same policies and/or practices of defendants.

Defendants further assert that because plaintiff Harper waited three years to notify the CRAs of the alleged inaccuracy on her consumer credit statement, her claims may be subjected to a unique defense for failure to correct not typical of the putative class. Initally, I note that defendants do not present evidence indicating that the other members of the putative class actually gave defendants the opportunity to correct any alleged inaccuracies in their credit statements. Regardless, plaintiff's claim for statutory and punitive damages focuses on whether defendants adopted a policy or engaged in conduct in contravention of the rights provided by the FCRA either knowingly or with reckless disregard, and thus any factual differences relating to opportunity to correct will not be a major focus of the litigation.

Finally, defendants argue that because the FCRA statute of limitations bars certain individuals whose claims arose prior to July 23, 2002 and plaintiff's claim arose after that date, plaintiff's claim is atypical. That is, plaintiff would have no interest regarding the adjudication of an appealable issue. However, defendants conceded at oral argument that I may correct this problem by granting plaintiff leave to amend her class complaint to add a named representative whose claim arose prior to the allegedly applicable statutory cut-off date. If I find that the rest of the requirements for class certification are met, I will grant plaintiff leave to amend so that the typicality requirement will be satisfied.

4.   Adequate Representation

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation requirement of Rule 23(a)(4) guarantees "that the representatives and their attorneys will competently, responsibly, and vigorously prosecute the suit and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977). Adequacy of representation depends on the circumstances surrounding each case. Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1974). The burden is on the defendant to prove that the representative plaintiffs will not adequately represent the class. See Shamberg v. Ahlstrom, 111 F.R.D. 689, 693 (D.N.J. 1986); see also Lewis v. Curtis, 671 F.2d 779, 788-89 (3d Cir. 1982). I must therefore determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." Johnston, 265 F.3d at 185.

I find that the adequacy of representation requirement of Rule 23(a)(4) is satisfied in this case. Defendants do not challenge the ability of plaintiff's counsel to represent the class.

However, defendants argue that plaintiff Harper is adequate because her interests are not aligned with those of the absent class members. Defendants allege that because plaintiff Harper believes she suffered thousands of dollars of actual damages, she need not pursue statutory damages to obtain her desired recovery, i.e., if defendants are found liable based on negligence, plaintiff need not carry the higher burden of proving that defendants willfully violated the FCRA to obtain a full recovery.

In support of this argument, defendants cite Bradburn Parent/Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing), No. 02-7676, 2004 WL 414047, at *9 (E.D. Pa. Mar. 1, 2004), for the proposition that plaintiff is an inadequate representative where "[p]laintiff's theory of damages is antagonistic to an alternative theory that many class members will likely wish to pursue." In Bradburn, a monopolization case, the court denied class certification where the named plaintiff occupied a significantly different position in the market than the members of the proposed class, causing the named plaintiff to pursue only an overcharge theory of damages that directly conflicted with a lost profits theory of damages available to the absent class members. Id. at *4.

Unlike Bradburn, this is not a case where "[p]laintiff is not in a position to pursue this alternative theory," or "where the named representative's interest in maximizing its own recovery provides a strong incentive to minimize the recovery of other class members." Id. at *3, *9. Here plaintiff is not only capable of pursuing statutory damages but has every incentive to pursue vigorously her statutory and punitive damages claim in the event that her actual damages claim is worth less than she hopes. Though plaintiff stated in her deposition that she believes she suffered thousands of dollars in actual damages, plaintiff never claimed to possess a precise actual damages figure. Further, plaintiff's recovery or pursuit of actual damages will not

11

minimize recovery of the absent class members should defendants be found liable based on willful violation of the FCRA. Finally, I note that a plaintiff who pursues statutory damages exclusively in this type of case would not adequately represent the interests of those putative class members who later wish to seek alternative grounds for relief, such as actual damages. Plaintiff here avoids this problem by seeking both statutory damages and actual damages.

B.      Rule 23(b)

In addition to satisfying Rule 23(a), plaintiff must show that the putative class falls under at least one of the three subsections of Rule 23(b). In this case, plaintiff asserts that the proposed class qualifies under Rule 23(b)(3),[2] which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To assist in this inquiry, I should consider: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Id. The Advisory Committee Note states that this subpart "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." As an example, the Advisory Committee states that a case involving fraud "perpetrated

---

[2]Though in her second amended complaint plaintiff asserts that the class may be certified under Rule 23(b)(2), she makes no mention of Rule 23(b)(2) in her motion for class certification. Rather, in her motion for class certification, plaintiff states, "In this case, certification under Rule 23(b)(3) is appropriate."

on numerous persons by the use of similar representations" can be certified under Rule 23(b)(3) even if damages have to be determined individually.

1.      Predominance of Common Questions

The Rule 23(b)(3) requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive to warrant certification." Newton, 259 F.3d at 187.  The predominance requirement of Rule 23(b) is more rigorous than the commonality requirement of Rule 23(a). McMahon Books, Inc. v. Willow Grove Assocs., 108 F.R.D. 32, 35 (E.D. Pa. 1985). As the Supreme Court has held: "Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . .  The Committee's warning, however, continues to call for caution where individual stakes are high and disparities among class members great." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997) (holding that although a proposed class of asbestos plaintiffs shared the goal of reaching a settlement the commonalities did not predominate over individual questions of causation regarding each plaintiff's degree of asbestos exposure under different conditions, pre-existing medical conditions, and tobacco use); see also Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages and impact . . . requires separate minitrials . . . courts have found that the staggering problems of logistics thus created make the damage aspect of the case predominate, and render the case unmanageable as a class action.") (internal citations omitted).

In the Clark litigation, the district court recognized that "the members of the proposed class have the following facts in common: 1) they are individuals who have not filed for bankruptcy; 2) their credit reports have one tradeline with the word 'bankruptcy' on it; and 3) the tradeline does not reference that the account was jointly held." Clark, 2002 WL 2005709, at *4. The putative class here is comprised of opt-outs from the Clark litigation, and accordingly the

claims of the individual members arise under similar factual circumstances. However, the key distinction between the <u>Clark</u> class certification and this action is that the certification in <u>Clark</u> took place in the context of a settlement class. Therefore, the district court in <u>Clark</u> was not confronted with the trial manageability issues presented here.

At oral argument, plaintiff conceded that individual factual inquiries into damages will be required for those class members choosing to pursue actual damages. For this reason, plaintiff argues that the major focus of litigation will be the defendants' conduct vis-a-vis their duty under the FCRA and defendants' resultant degree of liability. Yet in making this argument plaintiff ignores the fact that the defendants' failure to follow reasonable procedures to assure maximum possible accuracy comprises only one of the four elements of a claim under § 1681e(b). Plaintiff must also establish that the credit reports at issue included inaccurate information, the individual consumers suffered injuries, and the individual consumers' injuries were caused by the inclusion of the inaccuracies. See <u>Crane</u>, 282 F. Supp. 2d at 319 <u>citing</u> <u>Philbin</u>, 101 F.3d at 963. At trial, proof of these three additional elements, though traceable to defendants' conduct and policies, will require highly individualized proofs as to the injuries suffered by the putative class members. Though plaintiffs are not required to outline damages with specificity to state a claim under § 1681e(b), plaintiffs must produce sufficient proof of damages that is more than merely speculative.

In effect, by asserting that individualized inquiries are not necessary and that common questions predominate, plaintiff Harper asks me to read a strict liability standard into § 1681e(b). I refuse to hold that a willful and/or negligent violation of the FCRA exposes CRAs to liability with no factual inquiry into whether the absent class members were injured by the violation. At the very least, plaintiff would have to canvass the records of each member of the putative class to

determine the nature of injury, if any, sustained. Further, in the litigation context – as opposed to the settlement context – defendants seem intent on challenging plaintiff's assertion that defendants issued inaccurate credit reports to the individual class members, so plaintiff's inquiry would have to extend to the financial history of each putative class member.

Plaintiff's proposed trial plan provides for a single trial on liability and a single finding as to statutory and punitive damages. I find that such a plan is untenable under the liability analysis required by § 1681e(b). Plaintiff's claim may be typical of the absent class members' in that all claims arise from the same conduct, but due to the highly individualized proofs required I find that common questions do no predominate in this case. Therefore, I will deny class certification in this case.

2.      Superiority

In the alternative, I find that class certification should be denied because class adjudication is not the superior method of resolving the present claims. The requirement that a class action be the superior method of resolving the claims ensures that there is no other available method of handling it which has greater practical advantages. See Fed. R. Civ. P. 23, Advisory Committee Note, 1966 Amendment to 23(b)(3); Johnston, 265 F.3d at 194 ("A class action must represent the best available method for the fair and efficient adjudication of the controversy."). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. . . . Superiority must also be looked at from the point of view of the issues." Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3d Cir. 1974). I must address "the difficulties likely to be encountered in the management of a class action," Fed. R. Civ. P. 23(b)(3)(D), and I may consider alternatives to class certification, such as holding

separate trials with combined discovery or certifying the class with respect to liability but not damages.  See Johnston, 265 F.3d at 194.

Due to the individualized proofs required to establish liability under § 1681e(b), I find that individual actions would have greater practical advantages than a class adjudication on these claims.  Proceeding as a part of a certified class is the preferable litigation option for plaintiff and the putative class members.  Amchem, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); see MacNeal v. Columbine Exploration Corp., 123 F.R.D. 181, 188 (E.D. Pa. 1988) ("Because several of the [putative class] members have small interests, and individually they might not have the wherewithal to bring suit to protect their individual rights, class relief is superior to any other relief available in this case.").  Plaintiff asserts that the majority of the putative class will seek only statutory damages, and considering the small recovery potential for a statutory damages claim, individual members of the putative class would have little incentive to bring solo actions prosecuting their rights.

Though the initial expense, monetary and otherwise, of filing an action remains a deterrent to litigation despite the potential recovery of attorneys' fees at final judgment, I find that the policy rationale behind plaintiff's argument is eroded by the independent decision of each putative class member to opt-out of class treatment in Clark.  In other words, plaintiffs, possessed of the opportunity to take advantage of class treatment, expressly rejected it.  I am further persuaded by defendants' argument that the FCRA, by providing for the award of attorneys' fees, already provides an incentive for the putative class members to bring individual claims.

Defendants also argue that because the majority of the putative class members' claims are time-barred pursuant to the FCRA's two-year statute of limitations, class adjudication is not the superior method for resolving these claims. Plaintiff counters that the Clark litigation tolled the applicable statute of limitations pursuant to the rule first espoused by the Supreme Court in American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554 (1974) and that the statute of limitations concern does not implicate superiority because none of the putative class members' claims are time-barred. Because I deny plaintiff's class certification motion on alternative grounds and all parties agree that the FCRA's two-year statute of limitations is tolled for any individual actions brought by the members of the putative class under American Pipe and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354 (1983), I need not squarely face this issue.[3] Yet knowing that the putative class members may bring individual actions that are not time-barred pursuant to the applicable authority of American Pipe and Crown, Cork & Seal, I note that I would not be inclined to "draw[] the line arbitrarily to allow tolling to apply to individual claims but not to class claims." Yang v. Odom, 392 F.3d 97, 111 (3d Cir. 2004).

    An appropriate Order follows.

---

[3] In oral argument, defendants asserted that they were not asking me to adopt a blanket prohibition on successor class actions where the class is comprised exclusively of opt-outs from a prior class action. Instead, defendants argued that there is no authority for certifying such a class where the successor action was filed after the Order approving settlement in the prior class action and on a date beyond the expiration of the original statute of limitations. Because I decide plaintiff's motion on other grounds, I need not address this issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSELLA A. HARPER, on behalf of herself and all others similarly situated | : : : : | CIVIL ACTION |
| v. | : : | |
| TRANS UNION, LLC, et al. | : | NO. 04-3510 |

## ORDER

AND NOW, this 20th day of December 2006, upon consideration of plaintiff's motion for class certification, defendants' responses, plaintiff's reply, defendants' surreplies, and plaintiff's response thereto, and oral argument held on October 11, 2006, it is hereby ORDERED that plaintiff's motion for class certification is DENIED.

                                                s/Thomas N. O'Neill, Jr.
                                                THOMAS N. O'NEILL, JR., J.